## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

Robert Breest

v.                                   09-cv-177-JL

William Wrenn, Commissioner,
New Hampshire Department of
Corrections[1]

### O R D E R

Before the Court is Robert Breest's complaint, alleging that
defendant William Wrenn, the Commissioner of the New Hampshire
Department of Corrections ("NHDOC"), and NHDOC employee
Christopher Kench have violated Breest's federal constitutional
rights.   The matter is before me for preliminary review to
determine, among other things, whether Breest's complaint states
any claim upon which relief might be granted.  See 28 U.S.C. §
1915A(a); United States District Court District of New Hampshire
Local Rule ("LR") 4.3(d)(2).

---

[1]William Wrenn is the only defendant specifically named in
the complaint. I find, however, that the narrative of the
complaint indicates that the claims against Wrenn should also
have been alleged against Christopher Kench, who Breest claims
acted for Wrenn and on his behalf. Accordingly, I will consider
Kench a properly named defendant to this action.

## Standard of Review

Under this Court's local rules, when an incarcerated
plaintiff commences an action pro se and in forma pauperis, the
Magistrate Judge conducts a preliminary review of the matter.  LR
4.3(d)(2).  In conducting the preliminary review, the Court
construes pro se pleadings liberally, however inartfully pleaded.
See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)
(following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to
construe pro se pleadings liberally in favor of the pro se
party).  "The policy behind affording pro se plaintiffs liberal
interpretation is that if they present sufficient facts, the
court may intuit the correct cause of action, even if it was
imperfectly pled."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st
Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381
(2003) (courts may construe pro se pleadings to avoid
inappropriately stringent rules and unnecessary dismissals).
The court must accept as true the plaintiff's factual assertions,
see Erickson, 551 U.S. at 94, and any inferences reasonably drawn
therefrom.  See Centro Medico del Turabo, Inc. v. Feliciano de
Melecio, 406 F.3d 1, 5-6 (1st Cir. 2005); Ayala Serrano v. Lebron
Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990).  This review ensures

that pro se pleadings are given fair and meaningful
consideration.

## Background

In 1973, Robert Breest was convicted of murder.  Breest was
sentenced to forty years to life in prison.  Because he was
entitled to good-time credits under 1973 New Hampshire sentencing
law, Breest became eligible for parole after approximately 23 ½
years in prison.  A parole hearing was held before the New
Hampshire Parole Board ("NHPB") on June 22, 1995.  At that time,
Breest, who remained a NHDOC inmate, had been transferred to a
prison within the Massachusetts Department of Corrections
("MDOC").[2]

At the June 22, 1995 parole hearing, Breest appeared before
the NHPB.  At that hearing, the NHPB stated that they would not
recommend parole[3] for Breest before he had successfully spent a

---

[2]Breest was transferred pursuant to the New England
Interstate Corrections Compact.  See N.H. Rev. Stat. Ann. § 622-
A, et seq. and M.G.L.A. § 125 App. §§ 1-2.

[3]Breest was sentenced under N.H. Rev. Stat. Ann. ("RSA")
651-A:8 (formerly RSA 607:41-b), which states that:

> A prisoner serving a sentence of life imprisonment
> who has been convicted of murder which was psycho-
> sexual in nature and committed prior to April 15,
> 1974, shall not be eligible for parole until he
> shall have served 40 years minus any credits

3

period of time in minimum custody or on work release, noting the

length of time he had spent incarcerated and the consequent need

for a transitional period prior to his release on parole.  At the

hearing, the members of the NHPB discussed the advisability of

moving Breest back to New Hampshire in order to immediately place

him in minimum security.  After consultation with Breest, who

preferred to stay in Massachusetts near his family, the NHPB

decided to keep Breest in Massachusetts and recommend to the MDOC

that Breest be reviewed for a reduced custody status in that

jurisdiction.  The NHPB set a review hearing for sixty days to

determine whether or not Breest had obtained a reduced custody

level in Massachusetts, and if so, whether or not he had been

_____

> earned under the provisions of RSA 651-A:22 and
> RSA 651-A:23 and until the board shall recommend
> to the superior court that said prisoner should be
> released on parole.  The superior court shall have
> a hearing on the recommendation of the board at
> which all interested parties, including the
> attorney general, may appear and present evidence.
> If it shall appear to the superior court after
> said hearing that there is a reasonable
> probability that the prisoner will remain at
> liberty without violating the law and will conduct
> himself as a good citizen, the court may order him
> released on parole with such conditions as it may
> deem just.

Breest is apparently the only person ever to have been sentenced
under this statute before its 1974 repeal.

4

successful at that custody level.  If Breest was not transferred
to reduced custody in Massachusetts, the Classifications
Department of the NHDOC, who had a representative at Breest's
June 22 hearing, stated that if Breest were to be returned to New
Hampshire, he could be placed into minimum security.
Additionally, the NHPB agreed to rehear Breest's request for a
recommendation of parole release in six months, after he had
spent time in a minimum security or work-release setting.

Breest was returned to Massachusetts.  The NHPB requested
that the MDOC review Breest for eligibility for a lowered custody
status.  The MDOC declined to consider a reduction in Breest's
custody status, stating that under the Massachusetts custody
rules, anyone convicted, as Breest was, of first degree murder,
was ineligible for minimum custody.  This MDOC policy was based
on the fact that at that time, in Massachusetts, a first degree
murder conviction automatically brought with it a sentence of
life in prison without the possibility of parole.  Accordingly,
there were no Massachusetts prisoners in Breest's position of
having been convicted of first degree murder but having obtained
statutory eligibility for parole consideration.  Breest was
eventually able to convince the MDOC authorities that he should

be classified like a Massachusetts prisoner serving a sentence
for second degree murder, as such inmates are, under certain
circumstances, eligible to obtain a minimum custody status.
Specifically, the MDOC will consider an inmate convicted of an
offense in Massachusetts involving the loss of life a minimum
security classification if the inmate is either within two years
of a definitive release date, or has received "a positive parole
determination."

Breest's factual allegations then jump to November 2007.
Breest, who was still incarcerated in Massachusetts, alleges that
he was told in September 2007 that he would need a positive
parole determination to obtain reduced custody. Believing that
the NHPB's June 1995 determination constituted a positive parole
decision, Breest applied for reduced custody status but was
denied a reduction to minimum security, as the MDOC found,
presumably after communicating with NHDOC officials, that Breest
had not obtained a positive parole determination in 1995.[4]

On November 27, 2007, Breest wrote to Wrenn and asked him to
advise the MDOC that he had, in fact, been granted a positive

───────────────

[4]Breest implies that he has not received another parole
hearing since June 1995 because he has never been placed in
minimum custody, a prerequisite for him to receiving another
parole hearing.

6

parole determination in June 1995. On December 26, 2007,
Christopher Kench, acting on behalf of Wrenn, wrote to Breest and
told him that the NHDOC Commissioner's office would not support a
twelve-year old parole decision, and that a new positive
determination would need to be made of Breest's eligibility for
parole by the NHPB before NHDOC officials would communicate a
positive result to the MDOC.[5]

Breest now seeks relief from this Court in the form of a
declaration that Breest has a liberty interest in being
considered to be eligible for minimum security placement, as the
NHPB conditioned their recommendation of release on such
placement. Further, Breest seeks to enjoin Wrenn and Kench from
continuing to advise MDOC officials that Breest has not received
a positive parole determination, as that has resulted in Breest's
ineligibility for consideration for minimum security status.

---

[5]Breest, in the narrative of his complaint, characterizes
Kench's letter as stating a disagreement with the 1995
recommendation on its merits. Breest has attached the letter,
however, which states only that the Commissioner is unwilling to
stand behind a stale recommendation.

Discussion[6]

I. Section 1983 Claims

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law. See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled in part, on other grounds, by Daniels v. Williams, 474 U.S. 327, 330 (1986)); Rodriquez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997). In order to be held liable for a violation under § 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).

"[A] prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement,'" and must seek federal habeas corpus relief instead. Wilkinson v. Dotson, 544 U.S. 74, 78 (2005) (quoting Preiser v. Rodriguez, 411 U.S. 475, 489 (1973)) (other citations omitted). A prisoner seeking relief that, if granted, will invalidate the state procedures used to deny parole eligibility, may raise his claim under the

_____

[6]The claims, as identified here, will be considered to be the claims raised in this matter for all purposes. If Breest disagrees with the claims as identified here, he must do so by properly moving to amend his complaint.

8

auspices of § 1983.  See Wilkinson, 544 U.S. at 82 (holding that
where success in an action means, at most, that an inmate will be
eligible for parole review, action may lie under § 1983).

The premise of Breest's claims is that the defendant, a
state actor, has abridged rights guaranteed to Breest by the
Fourteenth Amendment to the United States Constitution.  Further,
Breest's action challenges the actions of the defendant which, he
alleges, resulted in a denial of his access to a hearing to
determine his parole eligibility.  Granting the declaratory and
injunctive relief sought here by Breest would, at most, result in
Breest gaining access to the means to obtain a parole hearing.
Accordingly, this action is properly raised under § 1983.

## II.  Equal Protection Claim

Breest claims that Wrenn and Kench, by refusing to affirm
that Breest received a positive determination from the NHPB,
denied him access to consideration for a security level reduction
when similarly situated inmates in New Hampshire would have such
access.  As a result, Breest is unable to obtain a minimum
security or work-release status at the MDOC.  Consequently,
Breest has been denied the opportunity to meet the NHPB's
requirement that he serve time in a minimum security status or

9

work-release program prior to being considered for parole eligibility. Such a claim, although not specifically plead as such, asserts a violation of Breest's rights under the Fourteenth Amendment's Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment mandates that similarly situated persons be treated alike absent a rational basis for doing otherwise. See City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)); accord Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (recognizing equal protection claim where plaintiff alleges that he has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment). While some jurisdictions have held that, for equal protection purposes, inmates transferred pursuant to an interstate compact are similarly situated to inmates in the receiving state, see e.g., Stewart v. McManus, 924 F.2d 138, 142 (8th Cir. 1991) and Tucker v. Angelone, 954 F. Supp. 134, 136 (E.D. Va. 1997), others have held that such inmates are similarly situated to those in the sending state. See Carillo v. DuBois, 23 F. Supp. 2d 103, 109 (D. Mass. 1998) (vacated in part, on othergrounds, by 32 F.

10

Supp. 2d 35 (1999)). In Carillo, a case factually similar to this one, and raising a number of identical concerns, the Court held that an inmate incarcerated out-of-state was subject to the parole authority of the sending state and therefore was not similarly situated to inmates in the receiving state. Id. at 106 (holding that a Rhode Island inmate housed in Massachusetts but convicted under the laws of Rhode Island and subject to Rhode Island's parole authorities cannot be similarly situated to Massachusetts inmates).

Like the inmate in Carillo, Breest was transferred from New Hampshire to Massachusetts, pursuant to the New England Interstate Corrections Compact ("the Compact"). N.H. Rev. Stat. Ann. ("RSA") § 622-A et seq.; M.G.L.A. § 125 App. §§ 1-2. Inmates confined pursuant to the terms of the Compact are subject to the sentencing and parole jurisdiction of the sending state. RSA § 622-A, art. IV(c).

For equal protection purposes, Breest cannot be deemed to be similarly situated to inmates convicted under the laws of Massachusetts, as Massachusetts inmates are not subject to the parole jurisdiction of New Hampshire. See Carillo, 23 F. Supp. 2d at 106 ("Because inmates in one jurisdiction are subject to a

11

different parole authority from inmates in the other

jurisdiction, it is pointless, for equal protection purposes, to

treat an inmate subject to the parole jurisdiction of [the

sending state] as if he were subject to the jurisdiction of [the

receiving state] parole authorities."). For equal protection

purposes, therefore, Breest is similarly situated to inmates

convicted under the laws of New Hampshire and subject to its

penal and parole authorities.

Breest has no freestanding constitutionally protected

liberty interest in any particular security classification,

parole, or vocational programs. See Moody v. Daggett, 429 U.S.

78, 88 n.9 (1976) (security classifications); Greenholtz v.

Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979)

(parole); McKune v. Lile, 536 U.S. 24, 39 (2002) (vocational

programs). Breest has not asserted that defendants used a

suspect classification in their decision-making processes.

Accordingly, Breest's claims are subject to rational basis

review. See McGinnis v. Royster, 410 U.S. 263, 270 (1973);

Inmates of Suffolk County Jail v. Rouse, 129 F.3d 649, 660 (1st

Cir. 1997) (classification that neither abridges a fundamental

right nor operates against a suspect class receives rational
basis review).

Breest alleges that while incarcerated in Massachusetts, he
has been denied certain privileges available to other similarly
situated New Hampshire inmates and as a result has not been given
the opportunity to demonstrate his eligibility for parole. Had
he remained in New Hampshire, or returned to New Hampshire after
his 1995 parole hearing, he would have attained a lower custody
level, or at least been immediately eligible to be considered for
a lower custody level, which would have given him a chance to
eventually obtain a favorable parole recommendation from the
NHPB. The record presently before me is silent as to any
rational basis for denying Breest the same privileges afforded to
other New Hampshire inmate, or the privileges that would have
been afforded to Breest had he stayed in or been returned to New
Hampshire. Breest's allegations, which I accept as true for
purposes of conducting this preliminary review, therefore, state
a claim under the Fourteenth Amendment's Equal Protection Clause
against Wrenn and Kench.

13

III. Due Process Claim

Breest claims that the findings and decisions made by the
NHPB during his June 1995 hearing created a liberty interest in
Breest having access to the requisite condition for obtaining
eligibility for a parole hearing and the chance to obtain a
favorable parole recommendation - placement in minimum security
or work-release status. Breest alleges that under federal law
and the Compact, he has a liberty interest in privileges he would
have received had he been incarcerated in New Hampshire. The
NHPB, during the June 1995 hearing, stated that he was eligible
for immediate placement into minimum security if he were a New
Hampshire inmate. Breest claims that Wrenn's and Kench's refusal
to communicate that eligibility to MDOC officials, and their
failure to characterize Breest as having received a favorable
determination by the NHPB for purposes of consideration for a
minimum security classification, denied Breest the opportunity to
be considered for a reduced custody status in Massachusetts,
which rendered it impossible for Breest to be considered for
parole eligibility in New Hampshire. Breest states that Wrenn
and Kench thereby deprived him of a liberty interest in a manner
that abridged his Fourteenth Amendment right to due process.

14

The Due Process clause of the Fourteenth Amendment prohibits
any state from depriving a person of life, liberty or property
without due process of law. U.S. Const. amend. XIV. The Supreme
Court has made it clear that "[t]he Due Process Clause standing
alone confers no liberty interest in freedom from state action
taken 'within the sentence imposed.'" Sandin v. Conner, 515 U.S.
472, 480 (1995) (quoting Hewitt v. Helms, 459 U.S. 460, 468
(1983)). The Supreme Court has also acknowledged that a state
may under certain circumstances create liberty interests
implicating the Due Process Clause:

> [T]hese interests will be generally limited to
> freedom from restraint which, while not exceeding
> the sentence in such an unexpected manner as to
> give rise to protection by the Due Process Clause
> of its own force . . . nonetheless imposes
> atypical and significant hardship on the inmate in
> relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 483-84 (citing Bd. of Pardons v. Allen, 482
U.S. 369 (1987)).

An inmate does not have any protected liberty interest in
custodial classifications unless state statutes or regulations
create such an interest. See Moody, 429 U.S. at 88 n.9; Olim,
461 U.S. at 248-50; see also Reid v. Brodeur, Civ. No. 96-492-PB,
2000 WL 1466146, at *2 (D.N.H. Jan. 24, 2000) (holding that

15

inmate had no protected liberty interest in custodial
classifications and therefore failed to allege a Fourteenth
Amendment due process claim for a deprivation thereof). New
Hampshire "state law does not give [an inmate] a right to any
particular custody status and a change in custody status is not
the type of 'atypical and significant hardship' from which a
prisoner is entitled to protection under the due process
clause.'" Novosel v. N.H. Parole Bd., Civ. No. 01-446-PB, 2002
WL 31248278, at *1 (D.N.H. Sept. 6, 2002) (citing Sandin, 515
U.S. at 484). Accordingly, Breest cannot establish a protected
liberty interest in his classification.

Further, neither federal nor state law creates any
protectable expectation of parole. As previously noted, a
convicted person has no constitutional right to be conditionally
released before the expiration of a valid sentence. See
Greenholtz, 442 U.S. at 7. A valid conviction, with all its
procedural safeguards, extinguishes that liberty right. Id.; see
also Meachum v. Fano, 427 U.S. 215, 215 (1976). A right to
parole under the Due Process Clause exists only if such right is
created by state law. See Sandin, 515 U.S. at 483-84. There is
no state-created liberty interest in parole under New Hampshire

16

law.  See Ainsworth v. Risley, 244 F.3d 209, 216-17 (1st Cir. 2001); Brooker v. Warden, Civ. No. 98-466-JD, 1999 WL 813893, at *2 (D.N.H. June 22, 1999) ("The possibility of parole is not a right to liberty conferred by New Hampshire state law."); Knowles v. Warden, 140 N.H. 387, 389, 666 A.2d 972, 975 (1995).  The New Hampshire statute under which Breest was sentenced specifically commits parole decisions to the discretion of the New Hampshire Superior Court.  See RSA § 651-A:8 ("If it shall appear to the superior court  .  .  .  that there is a reasonable probability that the prisoner will remain at liberty without violating the law and will conduct himself as a good citizen, the court may order him released on parole. . . ") (emphasis added).  In the cases of all inmates except for Breest, parole decisions are committed to the discretion of the NHPB.  See RSA 651-A:6 (providing that the NHPB "may" grant parole to eligible inmates); N.H. Code Admin. R. Ann. Par 301.02 (providing that parole shall be considered a privilege).  The language of RSA 651-A:8 requires the Superior Court to hold a parole hearing on the recommendation of the NHPB that a prisoner sentenced thereunder should be released on parole.  Nothing in the statute creates any right to a positive

17

parole decision by the Superior Court, or a positive parole recommendation by the NHPB.

Breest does not asset a liberty interest in parole eligibility or a freestanding interest in being eligible for minimum security so that he might one day get a parole hearing. Breest claims instead that the state has created, and he has thus acquired, a liberty interest in eligibility for minimum security, so that he might have the opportunity, in the future, to be eligible for parole. Breest claims that the NHPB created a protected liberty interest in his eligibility for minimum security by essentially granting him immediate eligibility for minimum security status in New Hampshire when they stated, in June 1995, that he would, if he were in New Hampshire, be immediately processed into minimum custody. In support of this assertion, Breest relies on the reasoning employed in Carillo. In Carillo, an inmate serving his sentence in Massachusetts pursuant to an interstate transfer, was not eligible to be considered for parole without first attaining a minimum security classification. Analyzing the provisions of the Compact, the Carillo Court held that because the inmate would have been eligible for a minimum security classification had he remained in

18

the sending state, he had a liberty interest in eligibility for a minimum security placement. 23 F. Supp. 2d at 108-09. Breest alleges that he has similarly obtained a liberty interest in eligibility for minimum security placement, as he was eligible for consideration for such placement in New Hampshire, as stated by NHPB officials at the June 1995 parole hearing. Breest now claims that Wrenn and Kench are denying him this liberty interest by virtue of their refusal to communicate his eligibility to MDOC officials.

The Compact provides that inmates confined pursuant to its terms are subject to the jurisdiction of the sending state. RSA § 622-A, art. IV(c). Article IV(h) of the Compact further provides that:

> [a]ny inmate confined pursuant to the terms of this compact shall have any and all rights to participate in and derive any benefits or incur or be relieved of any obligations or have such obligations modified or his status changed on account of any action or proceeding in which he could have participated if confined in any appropriate institution of the sending state located within such state.

Despite its mandatory language, the Compact itself is insufficient to create a liberty interest in privileges Breest would have enjoyed in New Hampshire. See Carillo, 23 F. Supp. 2d

19

at 108 (citing Sandin, 515 U.S. at 482) (criticizing reliance
upon mandatory language as a source of a liberty interst)). To
establish a liberty interest, Breest must demonstrate that his
inability to be considered for a minimum security classification
imposes an "atypical and significant hardship on the inmate in
relation to the ordinary incidents of prison life." Sandin, 515
U.S. at 482. Like the inmate in Carillo, Breest cannot achieve
parole without first attaining a minimum security classification,
and his ineligibility for minimum security in Massachusetts is
"dispositive of his fate as to parole" in New Hampshire. See id.
Accordingly, as it results in his ineligibility to even be
considered for parole, I find that Wrenn's and Kench's actions,
resulting in Breest's ineligibility for consideration for minimum
security in Massachusetts, where he would have been eligible for
such classification in New Hampshire, may constitute an "an
atypical and significant hardship on the inmate in relation to
the ordinary incidents of prison life." See id. Accordingly, I
find that Breest has stated Fourteenth Amendment due process
claims against Wrenn and Kench.

## Conclusion

For the foregoing reasons, and without further comment on the merits of the complaint, I direct that this action be served on defendants Wrenn and Kench, as I find that plaintiff has stated Fourteenth Amendment claims upon which relief may be granted. I order the complaint (document no. 1) be served on defendants. The Clerk's office is directed to serve the New Hampshire Office of the Attorney General (AG), as provided in the Agreement On Acceptance Of Service, copies of this order and the complaint (document no. 1). See LR 4.3(d)(2)(C). Within thirty days from receipt of these materials, the AG will submit to the court an Acceptance of Service notice specifying those defendants who have authorized the AG's office to receive service on their behalf. When the Acceptance of Service is filed, service will be deemed made on the last day of the thirty-day period.

As to those defendants who do not authorize the AG's office to receive service on their behalf or whom the AG declines to represent, the AG shall, within thirty days from receipt of the aforementioned materials, provide a separate list of the last known addresses of such defendants. The Clerk's office is instructed to complete service on these individuals by sending to

them, by certified mail, return receipt requested, copies of
these same documents.

Defendants are instructed to answer or otherwise plead
within twenty days of acceptance of service.  See Fed. R. Civ. P.
12(a)(1)(A).

Plaintiff is instructed that all future pleadings, written
motions, notices, or similar papers shall be served directly on
the Defendants by delivering or mailing the materials to them or
their attorneys, pursuant to Fed. R. Civ. P. 5(b).

**SO ORDERED.**

Justo Arenas
United States Magistrate Judge

Date:  July 10, 2009

cc:    Robert Breest, pro se

22